UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL MELLENTHIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-00292-SRC |
| | ) | |
| ROCK ROAD EQUITIES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**Memorandum and Order**

In March 2025, Daniel Mellenthin sued Rock Road Equities alleging that it violated the Americans with Disabilities Act. Doc. 1. Mellenthin served Rock Road on July 21, 2025. Doc. 7. But Rock Road did not answer or respond. So the Clerk of Court entered a default on September 11, 2025. Doc. 9. Mellenthin now moves for default judgment, seeking an injunction against Rock Road. Doc. 13.

**I.      Legal standard**

Default judgments are disfavored in the law, and before granting one, a court should satisfy itself that the moving party is entitled to judgment by reviewing the sufficiency of the complaint and the substantive merits of the plaintiff's claim. *United States ex rel. Time Equip. Rental & Sales, Inc. v. Harre*, 983 F.2d 128, 130 (8th Cir. 1993); *Monsanto v. Hargrove*, Case No. 4:09-cv-1628-CEJ, 2011 WL 5330674, at *1 (E.D. Mo. Nov. 7, 2011).

To obtain a default judgment under Rule 55(b), a party must follow a two-step process. First, the party must obtain an entry of default from the Clerk of Court. Fed. R. Civ. P. 55(a). "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the

party's default." *Id.* Once the Clerk enters default, the defendant is deemed to have admitted all well-pleaded factual allegations in the complaint. *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010) (citing *Thomson v. Wooster*, 114 U.S. 104 (1885)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

Second, the party must "apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). "[T]he entry of a default judgment . . . [is] committed to the sound discretion of the district court." *Harre*, 983 F.2d at 130 (citing *FTC v. Packers Brand Meats, Inc.*, 562 F.2d 9, 10 (8th Cir. 1977) (per curiam)). While courts deem all well-pleaded facts admitted upon default, "it remains for the [district] court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (citing 10A C. *Wright & Miller's Federal Practice and Procedure* § 2688 at 63 (3d. ed. 1998)).

## II. Discussion

The ADA prohibits places of public accommodation from discriminating against persons with disabilities. 42 U.S.C. § 12182(a). This includes "fail[ing] to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). However, an entity may, as a defense, argue that removing the barriers is an undue burden, 42 U.S.C. § 12182(b)(2)(A)(iii), or not readily achievable, 42 U.S.C. § 12182(b)(2)(A)(v). *Childress v. Fox Assocs., LLC*, 932 F.3d 1165, 1171 (8th Cir. 2019) (citing *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998)). Further, "[t]he ADA grants a private right of action for injunctive relief to 'any person' subject to disability discrimination." *Midwest Disability Initiative v. JANS Enters., Inc.*, 929 F.3d 603, 606

(8th Cir. 2019) (citing 42 U.S.C. § 12188(a)); *see also*, *Disability Support All. v. Heartwood Enters., LLC.*, 885 F.3d 543, 546 (8th Cir. 2018) ("[The ADA] limits a person subjected to public accommodation discrimination to 'preventive relief,' typically, a temporary or permanent injunction."). But when ordering an injunction, Federal Rule of Civil Procedure 65(d)(1)(B) requires the Court to "state [an injunction's] terms specifically[.]"

Seeking injunctive relief via a default judgment, Mellenthin alleges that Rock Road violated the ADA by denying him the full and equal enjoyment of Rock Road's property. Mellenthin alleges myriad violations of the ADA Accessibility Guidelines (referred to as ADAAG)—a comprehensive set of guidelines that define whether a facility's feature violates the ADA. Doc. 1 at 5–17; *Smith v. Hartmann's Moonshine Shoppe, LLC*, No. 17-cv-4211, 2019 WL 4888996, at *3 (D. Minn. Oct. 3, 2019) (first citing *Davis v. Anthony, Inc.*, 886 F.3d 674, 676 n.2 (8th Cir. 2018); then citing *Loskot v. Mathews*, No. 2:09-cv-00011, 2010 WL 1173053, at *2 (E.D. Cal. Mar. 23, 2010)). Specifically, Mellenthin alleges the following violations:

ACCESSIBLE ELEMENTS:
(i) Across the vehicular way from St. Vincent De Paul Thrift Store, the bottom edge of the signs identifying the three accessible parking spaces are at a height below 60 inches from the floor in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.
(ii) Across the vehicular way from St. Vincent De Paul Thrift Store, due to a failure to enact a policy of proper parking lot maintenance, the ground surfaces of the three accessible spaces and associated access aisles have vertical rises in excess of ¼ (one-quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 502.4, 302 and 303 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property.
(iii) Due to the placement of a postal mailbox in the accessible route, there are publicly accessible areas of the Property having accessible routes with clear widths below the minimum 36 (thirty-six) inch requirement as required by Section 403.5.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the rest of the units of the Property as Plaintiff's wheelchair would not be able to get past this barrier.

(iv)   Due to the placement of a postal mailbox in the accessible route, the Property lacks an accessible route connecting accessible facilities, accessible elements and/or accessible spaces of the Property in violation of Section 206.2.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access public features of the Property.

(v)    Around the corner from the mailbox, the walking surfaces of the accessible route have a cross slope in excess of 1:48, in violation of Section 403.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because excessive cross-slope along accessible routes increases the likelihood of Plaintiff's wheelchair tipping over on its side and injuring Plaintiff.

(vi)   On the exterior access route in front of Unit 10529-31, the walking surfaces of the accessible route have a slope in excess of 1:20 in violation of Section 403.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property. As the accessible route is in excess of 1:20, it is considered an accessible ramp, moreover, it has a total rise greater than six (6) inches yet does not have handrails in compliance with Section 505 of the 2010 ADAAG standards, this is a violation of Section 405.8 of the 2010 ADAAG Standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property as ramps are often more difficult for disabled individuals to traverse and require handrails on both sides so that the disabled individual can use the handrail to assist them up the sloped surface.

(vii)  On the exterior access route in front of Unit 10529-31, the walking surfaces of the accessible route have a cross slope in excess of 1:48, in violation of Section 403.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because excessive cross-slope along accessible routes increases the likelihood of Plaintiff's wheelchair tipping over on its side and injuring Plaintiff.

(viii) In front of Unit 10527, the accessible parking space and associated access aisle have a running inverted slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

(ix)   In front of Unit 10527, the accessible parking space is missing an identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

(x)    In front of Unit 10527, the landing at the top of the curb accessible ramp does not have 36- (thirty-six) inch clear space in violation of Section 406.4 of the 2010 ADAAG standards. This barrier to access would make it difficult and dangerous for Plaintiff to access the Property.

(xi) In between Unit 10525 and 10523, due to the presence of a column as well as the placement of a trashcan in the exterior accessible route, there are publicly accessible areas of the Property having accessible routes with clear widths below the minimum 36- (thirty-six) inch requirement as required by Section 403.5.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the rest of the units of the Property as Plaintiff's wheelchair would not be able to get past this barrier.

(xii) Just past Unit 10525, due to the presence of columns as well as the placement of a trashcan in the exterior accessible route, the Property lacks an accessible route connecting accessible facilities, accessible elements and/or accessible spaces of the Property in violation of Section 206.2.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access public features of the Property.

(xiii) In front of Unit 10523, the accessible parking space is missing an identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

(xiv) In front of Unit 10523, due to a failure to enact a policy of proper parking lot maintenance, the ground surfaces of the accessible space have vertical rises in excess of ¼ (one-quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 502.4, 302[,] and 303 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property.

(xv) At Unit 10523, due to an approximate two[-] to three-inch vertical rise, the Property lacks an access route from site arrival points such as the public streets and sidewalks to the accessible entrance in violation of Section 206.2.1 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the Property.

(xvi) At Unit 10523, due to an approximate two[-] to three-inch vertical rise, the total vertical rise of accessible route leading from public sidewalk is greater than ½ (onehalf) inch and thus, the accessible route is not ramped in compliance with Section 405 or 406, this is a violation of Section 303.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because the vertical rise in the form of stairs would make it almost impossible for Plaintiff to safely access the interior of this public accommodation.

(xvii) At Unit 10523, due to an approximate two[-] to three-inch vertical rise, the accessible route leading into this public accommodation contains at least one vertical rise in excess of ¼ inch in violation of Section 303.2 of the 2010 ADAAG Standards. This barrier to access would make it difficult and dangerous for Plaintiff to attempt to utilize the accessible route as it increases the likelihood of the wheelchair tipping.

(xviii) At Unit 10523, due to an approximate two[-] to three-inch vertical rise, the maneuvering clearance of the accessible entrance is not level in violation of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access this unit of the Property since it is often necessary for individuals in wheelchairs to need to use their hands to both wheel through the doorway and keep the door open with another hand. When the maneuvering clearance is not level, this ordinarily difficult process is made even more difficult by the presence of an excessive vertical rise.

(xix) At Liberty Tax, due to an approximate three-inch vertical rise, the Property lacks an access route from site arrival points such as the public streets and sidewalks to the accessible entrance in violation of Section 206.2.1 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the Property.

(xx) At Liberty Tax, due to an approximate three-inch vertical rise, the total vertical rise of accessible route leading from [the] public sidewalk is greater than ½ (one-half) inch and thus, the accessible route is not ramped in compliance with Section 405 or 406, this is a violation of Section 303.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because the vertical rise in the form of stairs would make it almost impossible for Plaintiff to safely access the interior of this public accommodation.

(xxi) At Liberty Tax, due to an approximate three-inch vertical rise, the accessible route leading into this public accommodation contains at least one vertical rise in excess of ¼ inch in violation of Section 303.2 of the 2010 ADAAG Standards. This barrier to access would make it difficult and dangerous for Plaintiff to attempt to utilize the accessible route as it increases the likelihood of the wheelchair tipping.

(xxii) At Liberty Tax, due to an approximate three-inch vertical rise, the maneuvering clearance of the accessible entrance is not level in violation of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access this unit of the Property since it is often necessary for individuals in wheelchairs to need to use their hands to both wheel through the doorway and keep the door open with another hand. When the maneuvering clearance is not level, this ordinarily difficult process is made even more difficult by the presence of an excessive vertical rise.

(xxiii) At Unit 10517, the maneuvering clearance of this accessible entrance is not level (surface slope in excess of 1:48) in violation of Section 404.2.4.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access this unit of the Property since it is often necessary for individuals in wheelchairs to need to use their hands to both wheel through the doorway and keep the door open with another hand. When the maneuvering clearance is not level, this ordinarily difficult process is made even more difficult by the inappropriately higher slope.

(xxiv) In front of Unit 10513, the accessible parking space is missing an identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

(xxv) In front of Unit 10513, the accessible parking space has a slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and is not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

(xxvi) In front of Unit 10513, the ground surfaces at the base of the accessible ramp have vertical rises in excess of ¼ (one-quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 302, 303 and 405.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property as Plaintiff's wheel could get snagged on the vertical rise and cause the wheelchair to tip.

(xxvii) At Unit 10513, the maneuvering clearance of this accessible entrance is not level (surface slope in excess of 1:48) in violation of Section 404.2.4.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access this unit of the Property since it is often necessary for individuals in wheelchairs to need to use their hands to both wheel through the doorway and keep the door open with another hand. When the maneuvering clearance is not level, this ordinarily difficult process is made even more difficult by the inappropriately higher slope.

(xxviii) There is not at least one accessible entrance to each tenant space in the building that complies with Section 404 of the 2010 ADAAG standards which is a violation of Section 206.4.5 of the 2010 ADAAG Standards.

(xxix) As not all entrances comply with Section 404 of the 2010 ADAAG Standards, entrances that do comply with Section 404 of the 2010 ADAAG Standards are required to have signage identified by the International Symbol of Accessibility indicating an accessible entrance, however, no such signage exists on the Property in violation of Section 216.6 of the 2010 ADAAG Standards. Moreover, there is a lack of directional signage indicating the location of the nearest accessible entrance. This barrier to access would make it difficult for Plaintiff to locate an accessible entrance on the Property.

(xxx) Defendant fails to adhere to a policy, practice[,] and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

**PANDA CHINESE RESTAURANT RESTROOMS**

(xxxi) The door hardware providing access to the restrooms requires tight grasping and twisting of the wrist in violation of Section 404.2.7 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to utilize the restroom facilities.

(xxxii) The restroom door, when leaving, lacks a clear minimum maneuvering clearance, due to the proximity of the door hardware within 18 inches to the adjacent sink, in violation of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom due to the fact individuals in wheelchairs have their feet sticking out in front of them and when there is inadequate clearance near the door (less than 18 inches), their protruding feet block their ability to reach the door hardware to open the door.

(xxxiii) The height of the bottom edge of the reflective surface of the mirror in the bathroom is above the 40-inch maximum height permitted by Section 603.3 of the 2010 ADAAG standards. This barrier to access would make it difficult for the Plaintiff and/or any disabled individual to properly utilize the mirror in the restroom since Plaintiff is sitting in a wheelchair and is lower than a person standing up.

(xxxiv) The grab bars/handrails are positioned more than 36" above the finished floor and are not positioned in accordance with 609.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

(xxxv) Due to a policy of storing items on top of the grab bar, there is inadequate space between the grab bar and objects placed above the grab bar so as to no longer offer the required 12-inches of clearance, in violation of Section 609.3 of the 2010 ADAAG Standards. This barrier to access would make it difficult for Plaintiff to safely transfer from the wheelchair to the toilet and back.

(xxxvi) There is an unbeveled vertical rise exceeding ½ (one-half) inch at the threshold to the door leading to the restrooms in violation of Section 404.2.5 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to safely utilize the restroom facilities.

Doc. 13 at 5–11. Taking the well-pleaded factual allegations as true, the Court grants Mellenthin's Motion for a Default Judgment and his request for injunctive relief. *See* doc. 13; *see also* 42 U.S.C. § 12188(a). The Court orders Rock Road to remove the above-specified barriers only "where such removal is readily achievable," 42 U.S.C. § 12182(b)(2)(A)(iv), i.e., where removal is "easily accomplishable" and can be "carried out without much difficulty or expense," 42 U.S.C. § 12181(9). *See* 28 C.F.R. § 36.304–05.

The Court, however, declines Mellenthin's request to order the property's closure until Rock Road removes the above-mentioned barriers. *See* doc. 13 at 12. Finally, the Court orders

Mellenthin to serve this Order and the judgment on Rock Road, *see* Fed. R. Civ. P. 5(b), and file proof of service with the Court. The Court's Order shall be effective from the date of service on Rock Road.

II. **Conclusion**

Accordingly, the Court grants Mellenthin's [13] Motion for a Default Judgment. A separate judgment accompanies this Memorandum and Order.

So ordered this 27th day of February 2026.

                                              _____
                                              STEPHEN R. CLARK
                                              CHIEF UNITED STATES DISTRICT JUDGE